ARKANSAS STATE HIGHWAY COMMISSION *v.* JELKS.

4-6653                                              159 S. W. 2d 465

Opinion delivered March 2, 1942.

*Neill Bohlinger, John A. Fogleman* and *Herrn North-cutt,* for appellant.

*R. C. Brown,* for appellee.

MEHAFFY, J.    The appellant, Arkansas State Highway Commission, on January 13, 1940, filed in the circuit court of Crittenden county its complaint to condemn certain premises in that county, part of which belonged to the appellees, John L. Jelks and wife.    The complaint stated that the appellant was the duly authorized agency of the state of Arkansas, and that the premises desired to be condemned were to be used in the construction of a portion of state highway No. 61.    Appellant asked that a day be fixed at which time a hearing could be had to determine the amount of money to be deposited to secure any anticipated damages as the result of the condemnation.

Thereafter, the appellees, John L. Jelks and wife, filed their answer admitting the agency of the appellant; that such construction would be over and across their premises and would be used in construction of state highway No. 61; they claimed that nine acres, of the value of $125 per acre, would be actually appropriated, and that the remainder of their lands would be damaged in the sum of $1,000; they alleged that the damage would consist in the proposed highway cutting off fifteen acres in a triangular shape, leaving such tract too small to establish a separate farm and difficult to cultivate due to inconvenience of its location; that no benefits would inure and that all the appropriated land, and in fact the whole farm was cleared, in a high state of cultivation and good black land. They asked total damages in the amount of $2,125 together with costs and general relief.

The court ordered that a deposit of $1,250 should be placed in the registry of the court to secure to the appellees any possible damages, and stated that such amount deposited was not a final determination.

There was a trial and verdict and judgment in favor of the appellees for $570.80. The appellant filed motion for new trial which was overruled by the court and appeal to the Supreme Court was granted. The case is now here on appeal.

The appellant, in its motion for new trial, after stating that the verdict and judgment was contrary to law and contrary to the evidence, stated that the court should have permitted the appellant to introduce testimony relative to the cost of the highway that has been established for the purpose of proving benefits to appellees' property.

Numerous witnesses were introduced by both sides. One of the appellees, Dr. John L. Jelks, testified that he lived in Memphis, and that his father was a pioneer in this section of the country; that he was the owner of an 80-acre tract through which the new highway would pass; that he had bought it eight or ten years ago with the intention of improving it; at the time of the purchase the old Frisco railroad and old highway No. 63 ran through

the farm; that he had made a settlement with the old Frisco railroad for some right-of-way on the west side of the railroad, and that the Frisco Railroad Company paid him $100 an acre cash and had not claimed any benefits. He stated that confiscation of a highway 100 feet wide had been made through the best land that he had, and that all of it was cleared; he thought it to be around eight or nine acres. He then related a conversation with Judge Bond and further stated that a strip of 20 acres had been cut from the main body of land, and that it would be necessary to build another house to cultivate the acres; he had sold 70 acres in 1937 for $70 or $75 an acre; $2,000 was paid in cash and the purchaser, Mr. M. C. McKinney, had been unable to pay the balance and witness had foreclosed and obtained a return of the land; that he would not have taken $100 an acre for his farm at the time of the construction of the highway; that the new highway crossed the front and went through the back; that it came from the old Osceola road on the east, traversed southwesterly across the south end of the place, cutting off 18 or 20 acres, leaving three patches instead of a farm; he had intended to improve the place for a home; that he had not been benefited by the construction; that the land had been mutilated until it was no longer a farm; that it was seriously damaged and he should be reimbursed in the sum of $1,000 for damages to land not taken and $100 an acre for the land actually taken; the farm is about halfway between the town of Turrell and Gilmore; that there was a good highway and he could receive no benefits from the new one. A map was introduced showing appellees' land and the road.

The evidence offered by appellant was in conflict with this evidence. Some other witnesses testified that the property was not damaged and that the benefits were as great as the damage to the property.

The actual amount of land taken, as testified to by W. F. Deadrick, a resident engineer, was 5.708 acres. There is really no dispute as to the number of acres taken nor is there any dispute that the lands belonged to appellees.

It is contended by the appellant that the verdict is not supported by substantial evidence, and that the court erred in not permitting appellant to introduce testimony relative to the cost of the construction for the purpose of proof of enhancement in value.

It appears from the record that the jury allowed the appellees $100 per acre for the land actually taken. The total allowed by the jury for the 5.708 acres, which amount of land is not disputed, was $570.80. Certainly Dr. Jelks' testimony was substantial, and if so, the verdict is conclusive.

The following rule was adopted by this court and has been many times approved: "We will not reverse the judgment because of the insufficiency of the evidence, for, as we view the evidence, it is not physically impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner." *Mo. & N. A. Rd. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478.

And it may be said that it is not physically impossible that the appellees' land was worth what he testified it was worth. The jury had a right to believe this evidence, and apparently did believe it.

This court has many times held that in testing the sufficiency of the evidence, where there had been a directed verdict, if there is any substantial evidence, it is the duty of the court to submit the question to the jury. This court said in the case of *Mo. Pac. Rd. Co.* v. *Westerfield,* 192 Ark. 558, 92 S. W. 2d 862: "There are many decisions of this court to the effect that, if there is any substantial evidence to support the verdict of a jury, we cannot set the verdict aside. 'In testing whether or not there is any substantial evidence in a given case, the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute, but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict.' We have often held that in determining the sufficiency of the evidence to support the

verdict, we must view the evidence with every reasonable inference arising therefrom, in the light most favorable to the appellee. *Roach* v. *Haynes,* 189 Ark. 399, 72 S. W. 2d 532; *Healy & Roth* v. *Balmat,* 189 Ark. 442, 74 S. W. 2d 242; *Camden Fire Ins. Ass'n* v. *Reynolds,* 190 Ark. 390, 79 S. W. 2d 54; *Ark. Sand & Gravel Co.* v. *Knight,* 190 Ark. 386, 79 S. W. 2d 71.''

The evidence introduced by the appellees was substantial evidence, and whether it was true or not was a question for the determination of the jury, and not this court.

This case was submitted to the jury under proper instructions. The appellant does not complain about any instructions, and the rule is that where fair-minded men might differ honestly as to the conclusion to be drawn from the facts, either controverted or uncontroverted, the question should go to the jury, and it is the province of the jury to pass on the weight of the evidence and the credibility of the witnesses, and, even if it appears that the verdict is contrary to the preponderance of the testimony, this furnishes no ground for reversal. *Miss. River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. 2d 255; *Armour & Co.* v. *Rose,* 183 Ark. 413, 36 S. W. 2d 70; *Ark. P. & L. Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. 2d 846; *Hyatt* v. *Wiggins,* 178 Ark. 1085, 13 S. W. 2d 301; *Mo. Pac. Rd. Co.* v. *Juneau,* 178 Ark. 417, 10 S. W. 2d 867; *S. W. Bell Tel. Co.* v. *McAdoo,* 178 Ark. 111, 10 S. W. 2d 503; *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 499.

If there is any substantial evidence to support a verdict, the fact that this court might think the verdict was against the preponderance of the evidence would not justify a reversal. It is not the province of this court to pass on the credibility of the witnesses and the weight to be given to their testimony.

It is next contended that the court erred in refusing to permit the appellant to introduce testimony as to the cost of the construction for the purpose of proof of enhancement of value. What actually occurred, as shown by the record, is as follows:

''Mr. Northcutt: For the purpose of showing the present enhancement in value to the territory taken, I

would like to show to the court and to the jury the amount of material and labor that went into the building of the road just on the Jelks' property. Court: For the purpose of what? Mr. Northcutt: Enhancement in present value, such as building sites, filling station sites. Mr. Brown: I have never heard of that. I object to it. Court: I don't think that would be competent. You can say what the improvement is and certainly they can give their opinion as to what enhancement, if any, there was, but I don't believe the cost would be competent. Mr. Northcutt: Exceptions."

There was no objection by appellant to the court's refusal to admit this testimony, but when the court made the statement that he did not think it was competent, the attorney simply said: "Exceptions."

We think the court was clearly right; that this evidence, if introduced, would not tend to show the enhancement in value of appellees' property.

It appears, therefore, that the only question in this case is whether the evidence is sufficient to support the verdict, and we have reached the conclusion that it is.

The judgment is affirmed.